CALKINS and others v. OSHKOSH CARRIAGE Co. and others.[1]

(*Circuit Court, E. D. Wisconsin.* April, 1886.)

1. PATENTS FOR INVENTIONS—WANT OF NOVELTY.
     Letters patent No. 261,829, of August 1, 1882, to Alton J. Calkins, for an improvement in carriage bodies, are void for want of novelty.
2. SAME.
     The patent was for a carriage body having rounded corner posts, with grooves to receive the side and end panels, and tenons to receive side and end rails, and corner irons to hold the rails rigidly to the posts, the whole forming a carriage body ingeniously adjusted and held together without the aid of screws; but all the elements of the claim were old, and in view of the prior state of the art, *held*, that it did not require invention to bring them together.
3. SAME—MECHANICAL SKILL.
     Although the adjustment of the different parts of patentee's combination was novel, and the combination, as an entirety, useful, *held*, that it exhibited only the expected skill of the mechanic's calling, and not the creative work of the inventor.

In Equity.

*Erwin & Benedict,* for complainants.

*Cotzhausen, Sylvester, Scheiber & Sloan,* for defendants.

DYER, J. This is a suit to restrain the infringement of letters patent No. 261, 829, issued to the complainant Calkins August 1, 1882, upon an application filed May 18, 1882, for an improvement in carriage bodies, and to recover profits and damages. In the specifications of the patent the patentee describes his invention as follows:

"My invention relates to improvements in carriage bodies, and pertains to the peculiar construction of the corner posts, the side frames, and the manner of attaching the panels to the frames and corner pieces. My invention is further explained by reference to the accompanying drawings. * * * A is the corner post; B represents one of the standards, which are inserted at short intervals between the respective corners; C is the upper rail; D is the

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

lower rail; E are the panels. The corner posts, A, are provided with grooves, F, F, upon their respective edges for the reception of the ends of the panels, E, and recesses, G, G, for the reception of the ends of the rails, C, C. The rails, C, C, and the upper ends of the corner posts, A, are provided with a narrow flange or elevation, H, which projects above the body of the rail, and serves to retain the seat upon the edge of the box. The thickness of the posts, A, is such that they form a neat ornamental finish to the cover from the outside, while they are flush with the inner surface of the upper rails upon the inside. The ends of the posts, B, are tenoned into the lower and upper rails in the ordinary manner. Both the upper and lower rails, C and D, are provided with groves, I, I, for the reception of the respective upper and lower edges of the panels, whereby the panels are retained without screws at both their sides and ends as shown. The upper and lower rails are connected together by the standards, B, thus securing a rigid substantial frame for the body. It is obvious that by thus securing the edges of the panels in grooves, much stronger and more durable joints are formed than heretofore, and the tendency to become separated by action of the atmosphere is thus avoided. J, J, are corner irons, by which the corner posts and the top and bottoms rails are rigidly retained in contact. The corner posts may be made of cast-iron instead of wood, if desired."

The patent contains a single claim, which is for "the corner posts, A, provided with recesses, G, G, and grooves, F, F, in combination with rails, C and D, panels, E, and irons, J, J, substantially as and for the purpose specified."

The patentee perfected his alleged invention some time in September, 1881. Various questions arise upon the issues made by the pleadings. The defendants deny infringement. They also deny that Calkins was the original inventor of the alleged improvement, and allege that his patent was anticipated by other earlier patents; and that in the state of the art pertaining to carriage bodies his construction, as shown in the drawings and the models in evidence, is devoid of such originality and novelty as entitled him to a patent.

The court finds it necessary to consider but one of these questions, namely: Is the complainants' combination a patentable invention? Confessedly, all the several parts constituting the combination are old. Stating concisely the invention here claimed, it consists of a corner post made of a single piece of wood, the outer surface of which is oval or semicircular, so as to give to the carriage body rounded corners. Running the whole length of the corner post on each edge is a groove for the reception of the ends of panels, which constitute the sides and ends of the body. At the top of the post, and extending down some distance parallel with the grooves, but cut into the post deeper than the grooves, are recesses into which the ends of the rails are fitted. These rails, and the upper ends of the corner posts, are constructed with a narrow elevation projecting above the body of the rail, so as to furnish means for retaining the seat on the edge of the box. Grooves extend along the entire length of both the upper and lower rails, into which the upper and lower edge of the panels are fitted, and, as thus constructed, the rails externally overlap the panels at both top and bottom. Standards or ordinary posts are inserted at intervals be-

tween the different four corners, being tenoned into the lower and upper rails in the ordinary way. Then corner irons or straps, such as have always been used for a similar purpose, extend around the top and bottom of each corner post, reaching over to the rails to which they are fastened, so as to hold the rails rigidly in contact with the post. The arrangement of the different parts is ingenious, but I do not think, considering the state of the art, that it discloses anything more than the mechanical skill which we constantly see in the workmanship of the shops, and which cannot be called invention without regarding almost every new thing that may be novel, and may possess increased utility, as patentable.

As I have said, each of the parts considered separately is old. It is equally true that parts of the combination, as the patentee has described them, and as they appear in the model, are old. It is common knowledge that corner irons as here applied, and the fitting of panels in grooves to avoid the use of nails and screws, are as old as the workmanship of the village carpenter and blacksmith, as it came from their hands before the days of modern machinery. The covering of the top and bottom of the panel with what are called "rails" in the complainants' patent, has been long seen in all varieties of furniture and wood-work. Rounded corners of wagon bodies were not new when the complainant Calkins obtained his patent, and all that I can see in his improvement is quite an ingenious adjustment of these parts, such as the mechanical skill of one engaged in such work might well suggest.

In *Atlantic Works* v. *Brady*, 107 U. S. 192, 200, S. C. 2 Sup. Ct. Rep. 225, it was said that it is not the object of the patent laws to grant a monopoly for every trifling device which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures; and in *Thompson* v. *Boisselier*, 114 U. S. 11, S. C. 5 Sup. Ct. Rep. 1042, it was further said: "It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known; and that it shall be useful; but it must, under the constitution and the statute, amount to an invention or discovery." Instructive language on this subject is found in the opinion of Mr. Justice MATTHEWS, in *Hollister* v. *Benedict & Burnham Manuf'g Co.*, 113 U. S. 59, S. C. 5 Sup. Ct. Rep. 717, where it is said that novelty and increased utility in an improvement upon previous devices do not necessarily make it an invention; and that a device which displays only the expected skill of the maker's calling, and involves only the exercise of ordinary faculties of reasoning upon materials supplied by special knowledge and facility of manipulation resulting from habitual intelligent practice, is in no sense a creative work of inventive faculty, such as the constitution and the patent laws aim to encourage and reward. Such, in my opinion, is the character of the improvement made by the patentee, Calkins; and though in some respects the adjustment of the

different parts of his combination may be novel, and the combination as an entirety may be, and undoubtedly is, useful, it exhibits only the expected skill of the mechanic's calling, and not the creative work of the inventor.

For these reasons the bill must be dismissed.